UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SYLVESTER TOWNSEND,

    Petitioner,

    v.         Case No. 06-C-171

CATHY JESS,

    Respondent.

**DECISION AND ORDER ON PETITION FOR A WRIT OF HABEAS CORPUS**

### I. BACKGROUND

On February 9, 2006, the petitioner, Sylvester Townsend ("Townsend"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that on November 20, 2000, he was convicted of first degree reckless homicide, first degree recklessly endangering safety, and first degree endangering safety, all as party to the crime, contrary to Wis. Stat. §§ 940.02(1), 941.30(1), and 939.05, in the Milwaukee County Circuit Court. Townsend was sentenced to serve forty-six years of initial confinement, to be followed by a term of thirty years on extended supervision.

Townsend appealed his conviction to the Wisconsin Court of Appeals. On November 11, 2003, the court of appeals affirmed his conviction. On January 23, 2004, the Wisconsin Supreme Court denied his petition for review.

On July 16, 2004, Townsend filed a pro se motion for postconviction relief pursuant to Wis. Stat. § 974.06. That motion was denied by the Milwaukee County Circuit Court on July 19, 2004. On June 15, 2005, the Wisconsin Court of Appeals issued a decision affirming the lower court's

denial of Townsend's § 974.06 motion. On October 14, 2005, the Wisconsin Supreme Court denied Townsend's petition for review of the court of appeals' decision of June 15, 2005.

As previously stated, Townsend filed his federal habeas corpus petition on February 9, 2006. Townsend's habeas petition sets forth essentially seven claims for relief: (1) that his due process rights were violated when police officers unlawfully arrested him; (2) that his Fourth Amendment rights were violated when was denied a prompt probable cause hearing; (3) that the police "destroyed potentially discoverable impeachment material"; (4) that the prosecutor presented prejudicial and irrelevant evidence to the jury; (5) that the prosecutor's argument was improper; (6) that his trial counsel was ineffective for failing to conduct discovery and for failing to file a suppression motion; and (7) that he was improperly denied the opportunity to present his ineffectiveness of counsel claims at an evidentiary hearing.

On March 7, 2006, this court issued an order directing the respondent, Cathy Jess ("Jess"), to file her answer. On April 18, 2006, Jess filed her answer. Thereafter, the parties filed briefs setting forth their respective positions on the petitioner's claims. The claims set forth in Townsend's habeas corpus petition are now fully briefed and are ready for resolution. For the following reasons, Townsend's petition will be denied and this action will be dismissed.

## II. FEDERAL HABEAS CORPUS STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus for a person in custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Furthermore, federal courts may not grant habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: "(1) resulted in a decision that was contrary to, or

2

Case 2:06-cv-00171-WEC   Filed 11/15/06   Page 2 of 19   Document 30

denial of Townsend's § 974.06 motion. On October 14, 2005, the Wisconsin Supreme Court denied Townsend's petition for review of the court of appeals' decision of June 15, 2005.

As previously stated, Townsend filed his federal habeas corpus petition on February 9, 2006. Townsend's habeas petition sets forth essentially seven claims for relief: (1) that his due process rights were violated when police officers unlawfully arrested him; (2) that his Fourth Amendment rights were violated when was denied a prompt probable cause hearing; (3) that the police "destroyed potentially discoverable impeachment material"; (4) that the prosecutor presented prejudicial and irrelevant evidence to the jury; (5) that the prosecutor's argument was improper; (6) that his trial counsel was ineffective for failing to conduct discovery and for failing to file a suppression motion; and (7) that he was improperly denied the opportunity to present his ineffectiveness of counsel claims at an evidentiary hearing.

On March 7, 2006, this court issued an order directing the respondent, Cathy Jess ("Jess"), to file her answer. On April 18, 2006, Jess filed her answer. Thereafter, the parties filed briefs setting forth their respective positions on the petitioner's claims. The claims set forth in Townsend's habeas corpus petition are now fully briefed and are ready for resolution. For the following reasons, Townsend's petition will be denied and this action will be dismissed.

## II. FEDERAL HABEAS CORPUS STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus for a person in custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Furthermore, federal courts may not grant habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: "(1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision results in an "unreasonable application" of clearly established federal law when the state court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 413, 407; *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (quoting *Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir.1996)). Moreover, an "unreasonable application" of clearly established federal law means more than an erroneous or incorrect application. *Williams*, 529 U.S. at 411. If a state reviewing court's decision is "at least minimally consistent with the facts and circumstances of the case," a federal habeas court must uphold the state court ruling, even if it is not well or fully reasoned, *Hennon v. Cooper*, 109 F.3d 334, 335 (7th Cir. 1997), or "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997).

3

The relevant decision, for purposes of this assessment, is the decision of the last state court to rule on the merits of the petitioner's claims – here the decision of the Wisconsin Court of Appeals. *See McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003).

### III.  FACTUAL BACKGROUND

The facts which gave rise to Townsend's conviction are set forth in the Wisconsin Court of Appeals' decisions affirming his conviction and the denial of his postconviction motion.

> The jury heard testimony that Townsend's cousin, Jonathan Booth, told Townsend that he had been in an altercation and someone had fired a gun at him. Townsend was informed that a revolver he owned had been sold, but he found the purchaser and repurchased the gun. The jury also heard testimony that Townsend gathered other weapons he owned, including a shotgun and an AK-47 assault rifle.
>
> Townsend and others held a meeting. The jury heard testimony that Townsend sent two of those attending the meeting to retrieve ammunition he had stored. When the ammunition arrived, Townsend said, "Here's all the missiles," and passed out at least four weapons: a .45 caliber chrome automatic pistol, the AK-47, the shotgun, and the revolver he had repurchased. Others present had their own weapons. The group left, but Townsend did not accompany them. It appears that the men with the shotgun and AK-47 returned, however, before any shooting took place.
>
> The remainder of the group went to a nearby neighborhood. The group then opened fire on people standing around a parked car. At least thirty-four shots were fired from seven different weapons. One of the bullets shattered a car windshield and the glass cut the face and eye of a passenger, Tenifa Jones. One bystander was shot in the foot as he tried to run away. Finally, bullets struck the home of Carmen Martinez, whose eleven-year-old granddaughter, Rita, was visiting and asleep. One of the bullets struck Rita in the head, killing her.

(Ct. App. Dec., Nov. 11, 2003, at 2.)

During the investigation of the shooting,

> police learned through a confidential informant that Townsend facilitated the execution of the revenge shooting by providing some of the guns and ammunition to the individuals who did all the shooting. A portion of the information obtained from the confidential informant was used as a basis to obtain a search warrant for the residence at 2408 North 33rd Street in the City of Milwaukee. As police officers

4

were about to execute the warrant, they observed Townsend and two companions leave the residence and drive away in a Chevrolet Caprice. In short order, the police stopped the car and arrested Townsend. [This occurred on March 28, 2000 at 2:50 p.m.]

(Ct. App. Dec., June 14, 2005, ["Ct. App. Dec."] at 3.)

Townsend claims that he "was introduced to the Court for the purpose of setting bail . . . seven days after the arrest . . . and five days past the allowable time for a Gerstein hearing." However, according to the court of appeals, "[t]he record belies this claim. Townsend was arrested on March 28, 2000 at 2:50 p.m. The 'show-up' report attests that on March 30, 2000, at 10:50 a.m., the Honorable Jeffrey A. Wagner found probable cause existed for Townsend's arrest. Thus, the time between arrest and the court's probable cause determination was less than forty-eight hours." (Ct. App. Dec. at 6.)

Other facts relevant to Townsend's claims will be presented below during the course of addressing Townsend's various claims.

## IV. DISCUSSION

Townsend's first claim is that he was arrested without probable cause. More precisely, he argues that there was no arrest warrant issued for him because, according to Townsend, there was not enough evidence to arrest him. The Wisconsin Court of Appeals addressed, and rejected, this claim. In doing so the court stated the following:

> "Probable cause exists where the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe that the [accused] probably committed a crime." *State v. Koch*, 175 Wis. 2d 684, 701, 499 N.W.2d 152 (1993).
>
> It is undisputed that a confidential informant supplied investigating officers with sufficient information to justify the issuance of a search warrant for the residence at 2408 North 33rd Street to further investigate the retaliatory shooting incident of

5

> March 25, 2000, that precipitated the untimely death of eleven-year-old Rita Martinez by a stray bullet. Townsend was alleged to be living at the 33rd Street address. Information that Townsend was involved in the planning of the shootings, i.e., supplying the guns and ammunition for the retaliatory action, provided an additional basis for the search. Police officers went to the 33rd Street address for the purposes of executing the search warrant. In addition to this information, police also had information from Townsend's wife, Erika Joseph, which inculpated Townsend in the revenge shootings.
>
> Before the police could execute the warrant, Townsend and two companions were observed leaving the same premises and were seen driving away in the Caprice automobile. The officers followed the Caprice and eventually stopped it about six blocks away at 2673 North 29th Street. Townsend was arrested. The information provided by Townsend's wife, Erika Joseph, was more than enough to provide a basis for probable cause to arrest. The fact that the search warrant was not executed until after the arrest does not alter the fact that the police had probable cause to arrest Townsend. Accordingly, the claim that Townsend's arrest was unlawful and violative of the Fourth Amendment fails.

(Ct. App. Dec. at 4-5.) Simply stated, the court of appeals' decision was neither contrary to, nor an unreasonable application of, federal law. To be sure, before a person may be arrested without a warrant there must be probable cause to believe that he committed a crime. In *Beck v. Ohio*, 379 U.S. 89 (1964) the Supreme Court held that whether a warrantless arrest is

> constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable to make it - whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

379 U.S. at 91. For all intents and purposes, it was this precise test that the Wisconsin Court of Appeals applied in deciding whether Townsend's warrantless arrest was legal. Thus, the court applied the correct law. Moreover, the court's application of the law to the facts in Townsend's case was not unreasonable. Indeed, at the moment that they arrested Townsend the officers had information from a confidential informant, who happened to be Townsend's wife, that he was

6

involved in the shooting. Thus, to the extent that Townsend's habeas corpus petition is predicated on the claim that his arrest was illegal/unconstitutional, his petition will be denied.

Townsend next claims that he was not afforded a probable cause hearing within forty-eight hours of his arrest in accordance with *Gerstein v. Pugh*, 420 U.S. 103 (1975) and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), and that therefore he is entitled to habeas relief. In *Gerstein*, the Supreme Court held that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest. 420 U.S. at 124-25. Subsequently, in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), the Supreme Court defined "prompt" to mean that a judicial determination of probable cause must be made within forty-eight (48) hours of arrest barring a bona fide emergency or other extraordinary circumstance. 500 U.S. at 56-57.

Even assuming that Townsend was not afforded a probable cause hearing within forty-eight hours of his arrest, that would not in and of itself cause Townsend's conviction to be set aside. This was made clear by the Court in *Gerstein* when it stated:

> [We do not] retreat from the established rule that illegal arrest or detention does not void a subsequent conviction. Thus, as the Court of Appeals noted below, although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.

420 U.S. at 119 (citations omitted). Be that as it may, the Wisconsin Court of Appeals expressly found that Townsend had indeed received a probable cause determination within forty-eight hours of his arrest. That finding was based on a review of the arrest-detention report, which report is contained in Exhibit M to the respondent's Answer. Because that report does indeed indicate that a probable cause determination (as well as the setting of a $100,000 bond) was made on March 30,

7

2000 at 10:50 a.m., it follows that the court of appeals' factual determination on such question was not unreasonable. *See* 28 U.S.C. § 2254(d). And, because the record demonstrates that a probable cause determination was made in Townsend's case within forty-eight hours of his warrantless arrest, it follows that, to the extent his habeas corpus petition is predicated on the claim that he was not afforded a prompt determination of probable cause in violation of *Gerstein* and *Riverside*, his petition must be denied.

Townsend next claims that a Milwaukee police detective destroyed the notes that he took while interviewing certain witnesses in Townsend's case. According to Townsend, such destruction of notes constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), as well as a violation of Townsend's right to due process. In rejecting Townsend's argument, the Wisconsin Court of Appeals stated the following.

> From our review of the record, the [] assertion of a *Brady* violation cannot succeed because Townsend failed to show that any exculpatory information was withheld from him. [*Brady v. Maryland*, 373 U.S. 83 (1963)] As for the broader due process claim, it is now well recognized that error may arise from the failure to preserve original interview notes. *United States v. Harris*, 543 F.2d 1247, 1251-53 (9th Cir. 1976) (citing *United States v. Harrison*, 524 F.2d 421 (D.C. Cir. 1975)), but it is also recognized that such a claim is subject to a harmless error analysis, *Harris*, 543 F.2d at 1253.
>
> The record reveals that three witnesses – Erika Joseph, Rose Townsend and Selika Hamilton – in their interviews with police detectives, all implicated Townsend as being the leader in planning the revenge shooting. Townsend himself, on two separate occasions, admitted that he supplied guns and ammunition for the planned attack and that he knew for what purpose the guns and ammunition were to be used. Furthermore, in Townsend's direct appeal to this court, we concluded based upon his testimony, that there was sufficient evidence to convict him of the three alleged crimes. *See Townsend*, No. 2002AP2941-CR, unpublished slip op. at 2-3. Therefore, we conclude that no substantial rights of Townsend have been affected by the destruction of the initial interview notes and that any error that might have occurred was harmless.

8

(Ct. App. Dec. at 7-8.) (footnote omitted). To reiterate, federal courts may not grant habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In deciding Townsend's claim the Wisconsin Court of Appeals correctly cited *Brady* as being the first touchstone in its analysis. Indeed, *Brady* stands for the proposition that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution." 373 U.S. at 87. But, as the court of appeals correctly observed, one cannot show there to have been a violation of *Brady* without showing that exculpatory evidence was indeed suppressed by the prosecution. And, Townsend did not show that the original interview notes (which were admittedly discarded by the officer after the notes were put into typewritten format) contained any exculpatory information. Such being the case, this court cannot find that the court of appeals' adjudication of Townsend's claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Likewise, Townsend failed to show that the original notes of the officers were materially any different than the typed versions of the officers' witness interviews. Such being the case, the Wisconsin Court of Appeals' conclusion "that no substantial rights of Townsend have been affected

9

Case 2:06-cv-00171-WEC   Filed 11/15/06   Page 9 of 19   Document 30

by the destruction of the initial interview notes and that any error that might have occurred was harmless" was not contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the court of appeals' conclusion based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Thus, to the extent that Townsend's habeas corpus petition is predicated on the claim that the destruction of the original notes of interviews constituted a violation of Townsend's due process rights as well as a violation of *Brady v. Maryland*, his petition will be denied.

Townsend next claims that the prosecutor presented prejudicial and irrelevant evidence to the jury in violation of his right to due process. Specifically, Townsend argues that his due process rights were violated when the prosecutor presented to the jury a yellow and black racing jacket and a semi-automatic rifle, which, according to Townsend, had no relevance to the charges against him. The court of appeals addressed this claim in the following fashion.

> Detective Gregory Schuler testified that Selika Hamilton told him that one of the co-actors who met at the 2408 North 33rd Street address to plan the revenge shooting wore a yellow and black racing jacket. At trial, Hamilton denied giving such a statement. When two of the many co-actors were arrested, a jacket matching the description was found in their home. As argued by the State in its brief, this piece of evidence substantiated a portion of the statement that Hamilton had given to Schuler identifying one of the co-actors and the existence of the plan to seek revenge. Doubtless, the jacket and testimony about it, was relevant in identifying who was present at the revenge meeting.
>
> Townsend also claims error in admitting into evidence a semi-automatic, 12-gauge, Mac-90 rifle. His claim is essentially that the rifle's admission was irrelevant and thus, had a prejudicial effect on the jury. The charges lodged against Townsend were of a party-to-the-crime nature. The theory of the State's prosecution required demonstrating to the jury Townsend's efforts to contribute to the revenge shooting. To assist in this plan, evidence was presented showing that Townsend offered four different types of guns, plus ammunition to accomplish the plan. Among these weapons was the Mac-90 rifle that was introduced into evidence without

objection. From a reading of the record, it is evident that all of the guns supplied by Townsend were recovered, but only the Mac-90 was introduced into evidence.

> "'In determining a dispute concerning the relevancy of proffered evidence, the question to be resolved is . . . whether there is a logical or rational connection between the fact which is sought to be proved and a matter of fact which has been made an issue in the case.'" *State v. Alsteen*, 108 Wis. 2d 723, 729-30 324 N.W.2d 426 (1982) (citation omitted). Stated otherwise, relevancy is the exercise of determining whether the evidence under examination "tends to make the existence of a material fact more probable or less probable than it would be without the evidence." *Michael R.B. v. State*, 175 Wis. 2d 713, 724, 499 N.W.2d 641 (1993) (internal quotation marks, brackets and citation omitted). Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." WIS. STAT. § 904.03.
>
> Although the record is silent as to the reason for offering the Mac-90 into evidence, it can be reasonably inferred that its introduction into evidence was for the purpose of presenting one of the guns that was intended to assist the co-actors in reaping revenge. Whether the gun was actually used is beside the point because the focus of the allegations was on Townsend's participation in the plan seeking revenge. Townsend had indicated in his initial statement to the police that this rifle was one of the weapons he had provided to the co-actors to use in the revenge shooting. Thus, its introduction served also to corroborate Townsend's statements to police.
>
> Turning to any prejudice that the introduction of the Mac-90 may have had, we note that during cross-examination of the State's expert firearms witness, Roger Templin, trial counsel was able to extract a response that no spent casings from a shotgun were found at the scene of the shootings. Trial counsel emphasized this admission very effectively in his closing argument. Thus, the introduction of the rifle did not generate prejudice and we reject this claim of error.

(Ct. App. Dec. at 9-10.) Townsend argues that it was error for the trial court to admit both the gun and the jacket into evidence because (1) it was not shown that he, Townsend, was present at the shooting and (2) the jacket was not shown to be his. This may be so. However, as the court of appeals correctly observed, Townsend had indicated that this rifle was one of the weapons he had provided to the co-actors. And, at least one of the witnesses, Selika Hamilton, stated that one of the

11

co-actors who met to plan the revenge shooting wore a yellow and black racing jacket. That such a jacket was found at one of the alleged co-actor's homes was certainly relevant in so far as it corroborated Selika Hamilton's statement regarding there being a revenge meeting and regarding who was present.

The bottom line is that Townsend has not shown that the court of appeals' decision upholding the admissibility of these items of evidence was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Such being the case, to the extent that Townsend's habeas corpus petition is predicated on the admission into evidence of the jacket and the Mac-90 rifle, his petition will be denied.

Townsend next argues that his due process rights were violated when the prosecutor engaged in improper closing argument. More precisely, Townsend argues that the prosecutor improperly vouched for the credibility of the witnesses.

To begin, Townsend has not shown how the state appellate court's decision on this claim was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. For this reason alone, Townsend's petition (to the extent it is predicated on this claim) must be denied. More substantively, however, this court finds that the state appellate court's decision on this claim was neither contrary to, nor involved an unreasonable application of, clearly established law, as determined by the Supreme Court.

To be sure, a prosecutor's personally vouching for the credibility of certain witnesses is improper. In *United States v. Young*, 470 U.S. 1 (1985) the Supreme Court stated:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the

12

prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

470 U.S. at 18-19. At the same time, however, the Court did not order a new trial in *Young* because the Court was not persuaded that "the challenged argument seriously affected the fairness of the trial." *Id*. at 20.

In the case at bar, the court of appeals addressed Townsend's claim in the following fashion:

> Townsend claims his due process rights were violated when, during closing argument, the State vouched for the credibility of some of the State's witnesses and characterized defense witnesses as liars. He argues that the remarks of the prosecutor in closing argument went beyond reasoning from the evidence and suggests that the jury should draw a conclusion aside from the evidence presented. We are not convinced.
>
> "The line between permissible and impermissible final argument is not easy to [delineate] and is charted by the peculiar circumstances of each trial. Whether the prosecutor's conduct during closing argument affected the fairness of the trial is determined by viewing the statements in the context of the total trial." *State v. Smith*, . . . 268 Wis.2d 138, 671 N.W.2d 854. The line of demarcation to which we refer is thus "drawn where the prosecutor goes beyond reasoning from the evidence to a conclusion of guilt and instead suggests that the jury arrive at a verdict by considering factors other than the evidence." *State v. Draize*, 88 Wis.2d 445, 454, 276 N.W.2d 784 (1979). "Argument on matters not in evidence is improper." *State v. Albright*, 98 Wis.2d 663, 676, 298 N.W.2d 196 (Ct. App. 1980) (footnote omitted). The prosecutor, however, may comment on the credibility of witnesses as long as the comment is based upon evidence presented. *State v. Adams*, 221 Wis.2d 1, 17, 584 N.W.2d 695 (Ct. App. 1998).
>
> The basis for Townsend's claim is two-fold. First, during closing argument the prosecutor referred to Renee Harris, Townsend's girlfriend, as "not credible." Next the prosecutor opined:
>
>> So why should you listen to their live testimony at all? Frankly, I don't think you should believe their testimony. I think they were bad liars on the witness stand, but you should believe the initial statements that they gave to the police officers. Those initial

13

> statements are internally consistent with one another. They are consistent with the defendant's statement. They are consistent with the physical evidence. . . . .
>
> A complete reading of the State's final argument, however, reveals that Townsend has been far too selective in establishing a basis for his claim of error. Renee Harris had denied being Townsend's girlfriend. This assertion was controverted by Townsend's wife, Erika Joseph. This is a factual dispute of an evidentiary nature. The record further reveals that witnesses for both the State and Townsend contradicted themselves in police interviews and their trial testimony. These contradictions were also of an evidentiary nature. With these testimonial disputes in mind, the prosecutor pointed to those instances of evidence that were consistent with one another to suggest to the jurors why the trial testimony of several witnesses was not believable. These consistencies were both physical and testimonial. In addition, the prosecutor asked the jurors (as they were instructed they could do) to consider any apparent motives arising from the evidence that might influence witness testimony. The record is clear the prosecutor did not ask the jurors to draw conclusions by reasoning beyond the evidence presented. Rather, the prosecutor's comments were fairly based upon the evidence.

(Ct. App. Dec at 11-12.) In my opinion, the court of appeals accurately described the prosecutor's argument. Simply stated, the prosecutor did not personally vouch for the credibility (or incredibility) of the witnesses. Nor did the prosecutor express her personal opinion concerning Townsend's guilt. Nor did she make any sort of statement that contained a suggestion that she was relying on information outside the evidence presented at trial in arguing for the defendant's conviction. *See Young*, 470 U.S. at 19. Rather, the prosecutor presented to the jurors reasons (as supported by the evidence) why they should believe certain witness and not believe other witnesses. There is nothing improper (much less improper in a constitutional sense) about such an argument.

Such being the case, to the extent that Townsend's petition is predicated on the claim that the prosecutor engaged in improper closing argument, his petition will be denied.

Townsend next claims that his trial and appellate counsels were ineffective for failing to raise (1) the legality of his arrest, (2) his not being afforded a probable cause hearing within forty-eight

14

hours of his arrest in accordance with *Gerstein v. Pugh*, 420 U.S. 103 (1975) and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), and (3) the prosecutor's improper closing argument. Because this court has already determined that the court of appeals' disposition of such underlying claims was proper, it follows that, to the extent Townsend's ineffective assistance of counsel claim is predicated on such underlying claims, it must be rejected.

However, Townsend also asserts that his counsel was ineffective for failing to conduct discovery and for failing to file a suppression motion. The court of appeals dealt with such claims in the following fashion.

> Townsend also raises two other instances of alleged ineffective assistance of counsel, *i.e.*, failure to file a suppression motion and failure to conduct pretrial discovery.
>
> Townsend's claim of failure to file a suppression motion is unsustainable for two reasons. First, trial counsel did file a motion for a *Miranda-Goodchild* motion [sic] relating to the statements Townsend gave to police detectives. This motion is generically a motion to suppress if certain norms of performance are not met or if undue influence is exerted upon a suspect. Prior to the commencement of the jury trial, trial counsel indicated that the defense did not intend to pursue this motion. The trial court conducted a thorough colloquy with Townsend in which he approved a waiver of his right to the motion. Second, Townsend supplies this court with no further information other than the bald statement that his trial counsel was ineffective for failing to file a suppression motion. We have not been provided with the slightest clue of the purpose for which he filed this claim nor its dimension. We are not obligated to consider underdeveloped claims and eschew the opportunity to do so in this instance. *See State v. Pettit*, 171 Wis.2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992).
>
> Townsend also claims, for the first time, ineffective assistance of counsel for failure to conduct pretrial discovery. He did not raise this issue in his Wis. Stat. § 974.06 motion before the trial court. For that reason, we deem this claim of error waived. *See State v. Wedgeworth*, 100 Wis.2d 514, 528, 302 N.W.2d 810 (1981).
>
> In summary, on the merits, not one of the claims of error attributed to trial counsel has any merit. That being the case, trial counsel cannot be charged with ineffective assistance of counsel for failing to raise the issues in the trial court.

15

> Consequently, there is no merit for the claim that postconviction counsel was ineffective for not challenging trial counsel's failure to raise these issues.

(Ct. App. Dec. at 14-15.) (footnote omitted).  As the court of appeals noted, the trial court did conduct a colloquy with Townsend (although this court may not have gone so far as to describe it as a "thorough colloquy") in connection with his waiver of his right to pursue a motion to suppress the statements he made to police officers.  More particularly, the following transpired in the trial court on August 7, 2000:

> THE COURT: All right. Number 5, Miranda Goodchild hearing.  Mr. Poulson is that still a matter of issue that needs to be addressed?
>
> MR. POULSON: No, sir, it is not.  I have had discussions with my client on numerous occasions in regard to how we were going to deal with the statements that were taken from him while he was in custody, and I believe it is his position, as it is my position and as I was giving him the advise [sic], that at this point, it would - - we are going to waive that, waive that hearing.
>
> THE COURT: All right.  Mr. Townsend, it's been represented to the Court that you have discussed this with your attorney and that at this time, you're going to waive or essentially give up the right to challenge the admissibility of any statements that you may have used on the grounds - - challenged on the grounds of voluntariness as well as any Miranda issues surrounding that statement.  And by waiving this, that you are no longer in a position to challenge any introduction of any of those statements in this case.  Is that your understanding?
>
> MR. TOWNSEND: Yes, sir.
>
> THE COURT: All right.  And you have discussed this with your attorney?
>
> MR. TOWNSEND: Yes, sir.
>
> THE COURT: And it is your desire to give up or essentially waive any right to challenge what's called a Miranda Goodchild motion or challenge the statement?
>
> MR. TOWNSEND: Yes, sir.
>
> THE COURT: Then, at this time, Court will find that the defendant is making a - - essentially a knowing and voluntary waiver of his right to the Miranda Goodchild

> hearing on any statements that the defendant made and that the State may introduce this in the course of this trial.

(Answer, Ex. Y, August 7, 2000 Tr., at 12-14.)

In his reply brief Townsend asserts that "during the time of Townsend's trial he did not know what a Miranda Goodchild Motion was, but was advised by Mr. Poulson to waive the hearing." (Reply Br. at 26-27.) To be sure, Townsend may not have known that the legally appropriate way for the admissibility of his statement to be challenged was by way of a *Miranda/Goodchild* hearing. But, the above transcript excerpt clearly demonstrates that Townsend was aware that he was waiving his right to challenge the voluntariness of his statements and that they would be introduced against him at trial. Moreover, just as he failed to do in the state court of appeals, "Townsend supplies this court with no further information other than the bald statement that his trial counsel was ineffective for failing to file a suppression motion. [This court] has not been provided with the slightest clue of the purpose for which he filed this claim nor its dimension." (Ct. App. Dec. at 14.) Indeed, the same can be said with respect to his claim that his trial counsel was ineffective for failing to conduct discovery. Such being the case, it logically follows that Townsend has failed to demonstrate that the state appellate court's decision on his ineffective assistance of counsel claim was either contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court. As such, to the extent that Townsend's federal habeas corpus petition is predicated on an ineffective assistance of counsel claim, his petition will be denied.

Finally, Townsend clams that his "rights were violated when the Trial Court failed to give Townsend hearings to fully establish the record for appeal. [The trial court] also made a decision on the 974.06 motion without established reason or fact of record by not questioning trial counsel,

17

appellate counsel, the prosecutor or the involved police officer . . . in regards to their conduct."
(Pet'r's Br. at 37.) In essence, Townsend argues that the trial court abused its discretion in not conducting a hearing on Townsend's § 974.06 postconviction motion.

In rejecting this claim the Wisconsin Court of Appeals stated the following:

> Finally, Townsend claims his due process rights were violated when the postconviction court denied him a *Machner* hearing. We reject this claim.
>
> A hearing on a defendant's postconviction motion is not required if the defendant fails to allege sufficient facts in the postconviction motion to raise a question of fact, presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief. *State v. Bentley*, 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996). In such cases, the trial court may, in the exercise of its legal discretion, deny the motion without a hearing. *Id*.
>
> For all the reasons stated earlier in this opinion rejecting Townsend's claims, the record in this case conclusively demonstrates that he is not entitled to summarily denying Townsend's postconviction motion [sic].

(Ct. App. Dec. at 15.) To be sure, the court of appeals' conclusion was set forth rather clumsily in the last paragraph. But the point was made – Townsend's filings with the trial court had not demonstrated a need for an evidentiary hearing. And, Townsend has not demonstrated how the court of appeals' decision to uphold the trial court's denial of an evidentiary hearing was either contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court. Such being the case, to the extent that Townsend's federal habeas corpus petition is predicated on the claim that his due process rights were violated by not being afforded an evidentiary hearing on his § 974.06 postconviction motion, his petition will be denied.

In conclusion, and for all of the foregoing reasons, Townsend's petition for a writ of habeas corpus will be denied and this action will be dismissed.

18

**NOW THEREFORE IT IS ORDERED** that Townsend's petition for a writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 15th day of November 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge